```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                               )
3E Mobile, LLC,                )
                               )
            Plaintiff,         )
                               ) Civil Action No. 14-1975-EGS
       v.                      )
                               )
Global Cellular, Inc.,         )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION**

3E Mobile, LLC, ("3E") commenced this lawsuit in November 2014 based on Global Cellular, Inc.'s ("Global") alleged breach of the parties' 2013 Manufacturing Agreement ("Agreement"). Compl., ECF No. 1. In January 2015, Global asserted counterclaims against 3E for breach of contract, breach of implied covenant of good faith, unjust enrichment, and attorneys' fees. Answer and Countercl. ("Countercl."), ECF No. 5. 3E moves to dismiss Global's counterclaims for failure to state a claim and to strike Global's demand for attorneys' fees. Pl.'s Mot. Dismiss, ECF No. 11. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, 3E's motion is DENIED.

**I. Background**

3E is a manufacturer of cell phone protective cases. Countercl. at 9-10. Global is a provider of cell phone accessories, including protective cases. *Id*. In 2013, 3E and Global settled an intellectual property lawsuit in which 3E's predecessor Crystal Icing, Inc. ("Crystal") alleged that Global infringed on several registered copyrights by marketing, manufacturing, copying, and selling certain items, including cellphone accessories.[1] Compl. at ¶ 7. The intellectual property lawsuit settlement resulted in a multi-million dollar Agreement, the terms and obligations of which give rise to the parties' current dispute.

**A. The Agreement**

Pursuant to the Agreement, 3E agreed to manufacture certain items at Global's request, and Global agreed to sell those items to designated retailers at a specified price. Agreement, *See* Compl., Ex. A. The Agreement states that 3E "shall" provide the products ordered by Global within a specified amount of time, but that if 3E cannot provide the Product requested by Global for "any reason," 3E "may arrange to have the Product produced

---

[1] Crystal commenced the intellectual property lawsuit against Global in 2012 in the United States District Court for the Western District of New York. Compl. at ¶ 6. In May 2013, Crystal assigned all rights, title, and interest in the copyright registrations at issue to 3E. *Id*. at ¶ 8. As a result, 3E was substituted for Crystal in that lawsuit. *Id*. at ¶ 10.

by one of Global's current manufacturers." Agreement at Section 2.C.  The Agreement anticipates Global purchasing at least $3.9 million worth of product from 3E. *Id.* at Section 4.A. Under the Agreement, Global is obligated to make monthly advance payments of $25,000 per month to 3E for thirty-six (36) months. *Id.* at Sections 4.B and 4.C. The advance payments were to be applied as credit to orders placed by Global. *Id.* at Section 4.D. Any unused credit at the end of the Agreement's term would become "the sole and exclusive property" of 3E. *Id.* Section 4.F.

During the first six months of the Agreement's term, Global allegedly made more than 250 manufacturing requests and paid more than $150,000.00 in monthly advance payments. 3E did not produce any of the products ordered by Global. Def.'s Mem. Opp., ECF No. 12 at 1. After Global expressed concern about 3E's failure to source its orders, 3E executives advised Global to stop making the monthly payments. *Id.*[2] When Global stopped making payments, 3E filed this lawsuit, alleging breach of contract. Compl. at 2.

---

[2] Attached to Global's Memorandum in Opposition to 3E's Motion to Dismiss is an email exchange with 3E executives wherein the executives pledge to "personally see to it that Global's concerns [are] addressed and resolved" and that "Global need not make payments under the Manufacturing Agreement until 3E's failure to source products for Global had been resolved." Def.'s Mem. Opp., ECF No. 12, Ex. A.

**II. Discussion**[3]

    **A. Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The plaintiff need not plead all of the elements of a prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), nor must the plaintiff plead facts or law that match every element of a legal theory. *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000).

However, despite these liberal pleading standards, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,*

---

[3] As indicated by the Agreement, the parties agree that the United States District Court for the District of Columbia "will have sole and exclusive jurisdiction over disputes regarding the Manufacturing Agreement" and that "Pennsylvania law will govern . . . ." Agreement at ¶ 20.

556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted); *Twombly,* 550 U.S. at 562, 127 S.Ct. 1955. A claim is facially plausible when the facts pled in the complaint allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). While this standard does not amount to a "probability requirement," it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681 (D.C.Cir.2009) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). The court must also give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994) (internal citations omitted). Nevertheless, a court need not "accept inferences drawn by plaintiff [ ] if such inferences are unsupported by the facts set out in the complaint." *Id.* Further, "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal,* 129 S.Ct. at 1949.

**B. Global states a counterclaim for breach of contract and breach of implied duty of good faith and fair dealing.**

Global argues that 3E's failure to fulfill the more than 250 orders it placed during the first six months of the Agreement's term constitutes a breach of both the plain language of the contract and 3E's implied duties of good faith and fair dealing. Def.'s Mem. Opp. at 9-14. 3E contends that the plain language of the Agreement provides 3E with a choice—not an obligation—to fulfill Global's orders. Pl.'s Mem. Supp. at 11.

Global's breach of contract counterclaim rests on whether the plain language of the agreement obligates 3E to produce the Products ordered by Global. The relevant portion of the Agreement states:

> If Global provides Manufacturer a Product to manufacture, Manufacturer shall have thirty (30) days to create a mold and provide a sample of such Product for approval by Global. . . . After the date of approval, **Manufacturer shall provide the Product to Global** within a mass product time equivalent to that of Global's then current manufactures of equivalent products. **In the event that Manufacturer cannot provide the Product requested for any reason, Manufacturer may arrange to have the Product produced by one of Global's current manufacturers.**

Agreement, Section 2.C(emphasis added).[4]

---

[4] Section 2.C of the Agreement is quoted in its entirety in Global's Answer and Counterclaim, and the text of the full Agreement is attached to 3E's Complaint. *See* Countercl. at 10-11; Compl., Ex. A.

6

Global argues the Agreement obligates 3E to provide the product ordered by Global (" . . . Manufacture **shall** provide the Product . . .") and that only under some circumstances, 3E "may" arrange to have the product produced by another manufacturer. Def.'s Mem. Opp. at 8. 3E maintains that because the Agreement states that if 3E cannot produce the Product for "any reason" and that it "may" (not "shall") arrange for an alternative manufacturer to fill Global's orders, the Agreement "clearly and unambiguously expressed their intention to create a right and not an obligation." Pl.'s Mem. Supp. Mot. Dismiss, ECF No. 11-2 at 11.

"The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Salem Preferred Partners, LLC. V. Diamond Heavy Vehicle Solutions, LLC*, 1:12-CV-1202, 2012 WL 5905027, at *3 (M.D. Pa. Oct. 31, 2012) (citing *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F. 3d 229, 243 (3d Cir. 2008)). "Courts have the responsibility to determine as a matter of law whether contract terms are clear or ambiguous." *Haywood v. Univ. Of Pittsburgh*, 976 F. Supp. 2d 606, 640 (W.D. Pa. 2013) (citing *Baldwin v. Univ. of Pgh. Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011)). "A contract contains an ambiguity if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *Great Am. Ins.*, 544 F. 3d at 243.

"Interpretation of an ambiguous contract is for the trier of fact; a judge may interpret a contract as a matter of law where it is only susceptible to one reasonable interpretation." *Forum Ins. Co. v. Allied Sec., Inc.*, CIV. A. 87-1186, 1987 WL 26508, at *1 (E.D. Pa. Dec. 3, 1987) (citing *Mellon Bank, N.A. of Aetna Business Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980)).

Here, the terms of the Agreement are ambiguous and subject to more than one interpretation. The Agreement states that 3E "shall provide the product," but that if 3E cannot produce the product "for any reason," 3E "may" arrange for another Manufacturer to fill Global's orders. Agreement, Section 2.C. The legal distinction between "shall" and "may" is both critical and elementary. Shall is defined as a duty in "the mandatory sense that drafters typically intend and that courts typically uphold" whereas "may" is defined as "a possibility." Black's Law Dictionary (8th Ed. 2004) at 1407 and 1000. A superb example of inartful drafting, the Agreement's ambiguity is expressed by its plain language: 3E cannot be both obligated, in a mandatory sense, to produce products for Global while also having the option to identify alternative manufacturers, if, for "any reason", it cannot fulfill Global's orders.

3E insists that the Agreement unambiguously provides that it "may manufacture products for Global, it may have the products produced by another manufacturer, and in the event the

8

products are manufactured, they must be provided to Global within a certain amount of time." Pl.'s Rep. Br., ECF No. 13 at 3. 3E's reading of the Agreement is as untenable as it is unreasonable because it allows 3E to collect Global's advance payments absent any obligation to produce any product ordered by Global. Such an agreement is nonsensical on its face, and unfathomable in a context such as this where the parties expressly anticipated doing nearly $4 million worth of business with each other. *See* Agreement Section 4.A. For all of these reasons, the terms of the Agreement are ambiguous and Global has sufficiently pled a breach of contract counterclaim.

Furthermore, Global argues that even if 3E had the discretion under the Agreement to decide which orders to fill, 3E's refusal to source all 250 orders placed by Global in the first six months of the Agreement's term constitutes a violation of 3E's implied duty of good faith and fair dealing. Def.'s Mem. Opp. at 11.

Under Pennsylvania law, all contracts impose on each party a duty of good faith and fair dealing in the performance and enforcement of a contract. *Bedrock Stone & Stuff, Inc. v. Mfrs. & Traders Trust Co.*, 2005 U.S. Dist. LEXIS 10218(E.D. Pa. May 25, 2005); *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000). Good faith is defined as "honesty in fact in the conduct or transaction concerned." *Armstrong World Indus.,*

9

*Inc. v. Robert Levin Carpet Co.*, 1999 U.S. Dist. LEXIS 7743, *15 (E.D. Pa. May 19, 1999). An independent duty of good faith is generally recognized when there is a dispute about the parties' reasonable expectations. *Id.* "Good faith performance or enforcement of a contract emphasized faithfulness to an agreed common purpose and consistency with the justified expectations of the other party . . . ." *Pierce v. QVC, Inc.*, 555 F. Supp.2d 499, 503 (E.D. Pa. 2008)(citing Restatement (Second) of Contracts § 205 Cmt. a.)

Here, the Agreement was clearly entered into for the purpose of specifying the terms under which 3E and Global would do business with each other. To that end, Global has pled sufficient facts relating to its expectation that 3E would fulfill its orders pursuant to the Agreement to state a claim for breach of the implied covenants of good faith and fair dealing.

### C. The Agreement's notice and cure provision does not bar Global's claims.

3E argues that the notice provision included in the Agreement bars Global's counterclaims because Global failed to give 3E notice and an opportunity to cure its default. Pl.'s Mem. Supp. at 4.[5] Global argues that the plain language of the

---

[5] Notably, the notice provision is triggered by default, and 3E could only be found to be in default if it was in fact obligated to manufacture the products ordered by Global.

10

notice provision applies only to termination of the contract, not claims designed to enforce the Agreement. The Agreement's notice provision states:

> Upon a default of the Manufacturing Agreement, the non-defaulting party will provide written notice to the defaulting party within ten (10) days of the alleged default. The alleged defaulting party will have thirty (30) days from the date of notice to cure the default. If the default is not cured within thirty (30) days from the date of the default notice, the non-defaulting party may terminate the Manufacturing Agreement.

Manufacturing Agreement, ¶ 15. The plain text of the notice and cure provision indicates that it is triggered by default ("[u]pon **default** of the Manufacturing Agreement"). Global alleges that it "raised concerns" with 3E executives about 3E's failure to meet its obligations under the Agreement, and thus it should be found to have sufficiently complied with the Agreement's notice provision. Countercl. at 8, ¶3. Viewing the facts in a light most favorable to Global on its counterclaims, 3E has at best raised a question of fact in regard to whether Global complied with the notice and cure provision of the Agreement prior to alleging its counterclaims.[6]

---

[6] Based on Global's plausible reading of the notice and cure provision, there is also a question of fact in regard to whether the notice and cure provision applies to any situation other than termination of the contract. Def. Mem. Opp. at 12.

11

**D. Attorneys' fees**

Finally, 3E moves under Federal Rule of Civil Procedure 12(f) to strike Global's claim for attorneys' fees. Pl.'s Mem. Supp. at 15. Global argues that its claim for attorneys' fees is well founded under federal and Pennsylvania law, both of which allow attorneys' fees to be awarded where a party's conduct is arbitrary, vexatious or in bad faith. *See* 28 U.S.C. § 1927; 42 Pa. Cons. St. Ann. § 2503(7), (9). At this stage of the litigation, the Court is unable to access whether a factual basis exists for an award of attorney's fees. Accordingly, it would be premature to strike Global's demand for attorneys' fees at this juncture. Therefore, 3E's motion to strike attorneys' fees is denied.[7]

**III. Conclusion**

For the foregoing reasons 3E's Motion to Dismiss is DENIED.



    **Signed:    August 11, 2015**
                   **Emmet G. Sullivan**
                   **United States District Court Judge**

---

[7] Because Global's unjust enrichment claim was pled in the alternative, it need not be addressed in this opinion.